

DA 12-0079

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 329

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

BRYCE EVERETT PETERSON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC-08-151
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Wade Zolynski, Chief Appellate Defender; Sarah Chase Rosario, Assistant
            Appellate Defender, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General; Micheal S. Wellenstein,
            Assistant Attorney General, Helena, Montana

            William Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  September 18, 2013
Decided:  November 5, 2013

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Bryce Everett Peterson appeals from the District Court's Opinion & Order, filed December 14, 2011, denying his Motion to Withdraw Alford Pleas.  We affirm in part, reverse in part, and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     In November 2008, the State charged Peterson with the felony offenses of aggravated kidnapping, aggravated assault, assault with a weapon, intimidation, and aggravated burglary, and also the misdemeanor offense of partner or family member assault, second offense.  The affidavit filed in support of the charges alleges that on October 17, 2008, Peterson arrived at the house of his sometime girlfriend H.P., and kicked in the door.  Once inside Peterson began assaulting H.P., hitting her and forcing her to the floor where he continued the assault for an extended period of time.  Peterson forced H.P. into his truck and began driving, calling a hospital to report that H.P. had overdosed on medication.  When H.P. attempted to cry out for help Peterson punched her in the head and continued to slap her.  Peterson prevented H.P. from getting out of the truck, slamming her head into the interior before pulling off onto a side road in a remote area and telling H.P he was taking her where no one would ever find her.

¶3     Peterson then took H.P. to his home where he continued to assault her.  A Deputy arrived to check on H.P.'s safety but when he knocked on the door Peterson held a gun to her face and demanded that she be quiet.  The Deputy, hearing nothing from inside the

house, left. Peterson then began making phone calls and H.P. eventually escaped the house and was able to report what had happened to her.

¶4    Law enforcement officers surrounded Peterson's house. He refused to leave and made threats to kill specific officers who he could see outside. Peterson surrendered after about 18 hours and was taken to the hospital for an evaluation and then to jail. He retained an attorney to represent him.

¶5    In November 2008 the District Court ordered that Peterson be transferred to the Montana State Hospital for a mental evaluation to determine his fitness to proceed. Peterson was at MSH for two months after which treating professionals filed a report on his condition. They concluded that he did not suffer from a mental disease or defect, that he was fully capable of understanding the proceedings against him and of assisting in his own defense, and that he was fit to proceed to trial. The MSH report also concluded that Peterson had been fully capable of forming the "requisite state of mind" at the time of the offenses and of appreciating the criminality of his behavior. On February 4, 2009, the District Court found that Peterson was competent to stand trial.

¶6    Peterson's attorney retained a psychiatrist to conduct an independent evaluation. The defense psychiatrist evaluated Peterson and issued a report in July 2009 concluding that Peterson suffered from bipolar disorder, but that he was competent to stand trial. The defense psychiatrist concluded that Peterson had the ability to act with knowledge or purpose at the time of the offenses, although his ability to appreciate the criminality of his conduct was diminished by a mood disorder.

3

¶7     At a hearing in August 2009 the District Court granted the State's motion for leave to introduce evidence of prior instances in which Peterson had assaulted other women and H.P. At that same hearing the defense filed a brief questioning Peterson's competency to proceed.  The District Court heard argument and testimony on the competency issue, including testimony from Peterson.  The District Court noted that Peterson presented articulate, logical and coherent testimony about his personality disorders, the medications that addressed them, and the therapeutic significance of dosage levels.  The District Court concluded that nothing was presented to alter the conclusions of the professionals that Peterson had been capable of forming the required criminal intent at the time of the offenses, and that he was competent to stand trial.

¶8     On September 10, 2009, a day before trial was scheduled to begin, Peterson and his attorney appeared before the District Court to enter *Alford* pleas to all the charged offenses.  An *Alford* plea arises from the decision in *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970) and is recognized by statute in Montana.  Section 46-12-212, MCA.   An *Alford* plea allows a defendant to plead guilty to an offense without acknowledging his guilt.  *State v. Locke*, 2008 MT 423, ¶ 18, 347 Mont. 387, 198 P.3d 316.

¶9     Peterson and his attorney signed and filed a multi-page pleading captioned "Alford Plea and Waiver of Rights" in which Peterson affirmed his desire to voluntarily enter the pleas and that there was no plea agreement.  Peterson acknowledged that he was giving up a variety of rights, including the chance of being convicted of lesser included offenses and the chance of appeal on all issues except the voluntariness of the plea.  He affirmed

4

that he was satisfied with the services and competency of his attorney and that they had discussed the merits of the case and possible defenses. He affirmed that he was competent to enter the plea and did not suffer any emotional or mental disability that would make him unsure about what he was doing. He specifically explained in a handwritten passage that he wished to enter an *Alford* plea because he did not want to plead guilty but had determined that it was in his "best interests to avoid trial." He affirmed that he believed that a jury would find him guilty beyond a reasonable doubt.

¶10 Thereafter the District Court read the allegations for the charges of aggravated kidnapping and aggravated assault. Peterson entered *Alford* pleas to both charges. When the District Court read the allegations related to the charge of assault with a weapon, Peterson injected: "I can't do this. I can't do this. No, I'm not guilty of that. I'm not guilty of this." The District Court explained the nature of an *Alford* plea and Peterson responded that he understood that it was in his best interest to enter a plea because the "cards have been stacked against" him by the prosecution, apparently referring to prior rulings on evidentiary issues. The District Court then recessed the proceeding.

¶11 When the proceeding resumed some 20 minutes later, Peterson announced that he wanted two issues addressed: he requested an evaluation of his medication dosage and he requested that there be specific language in the plea documents stating that he maintained his innocence. Peterson agreed that the medication issue could be addressed after the plea proceeding, and he entered *Alford* pleas to the remaining charges. The District Court explained the possible penalties for the offenses as well as requirements for violent offender registration and restitution obligations. The District Court again informed

5

Peterson of the rights to trial that he was giving up and Peterson said that he understood. He affirmed that there were no assurances of leniency given in exchange for his pleas, nor was any force, threat or improper tactic used to obtain his pleas. Peterson's attorney told the District Court that he believed that Peterson was competent to enter the pleas and that his medication complaints did not affect his ability to understand the proceeding.

¶12 Peterson affirmed that his communication with his attorney was "as good as could be" and that they had disagreed about some things. He stated that he still did not understand how he could maintain his innocence and still enter an *Alford* plea. The District Court explained that an *Alford* plea is like a guilty plea but without agreement that he committed every element of each offense. Peterson stated again that he believed that there was "no defense" for him because the prosecutor had lied to the court to obtain favorable evidentiary rulings. Even so, Peterson stated that it was "absolutely" in his best interests to plead to the charges rather than to go to trial.

¶13 Peterson's attorney summarized the time he had spent on the case, noting a couple dozen personal meetings and close to 100 telephone calls. The attorney affirmed that they discussed the evidence, including discussions involving the defense investigator.

¶14 Peterson then affirmed that it was his choice to go ahead with the pleas instead of going to trial and provided a detailed and rational explanation of his medication issues. The District Court then found that there was a factual basis for the charges, based upon the facts set out in the affidavit filed in support of the motion for leave to file the information against Peterson. The District Court found that Peterson entered the pleas knowingly, voluntarily and intelligently. The District Court accepted the *Alford* pleas.

¶15 The District Court conducted sentencing hearings on October 23 and November 13, 2009, and received testimony about the crimes and about Peterson's mental state. Peterson admitted to a history of abusing women but claimed he was suffering from a mental disease or defect at the time of the prior events. Mental health professionals from the Montana State Hospital testified that while Peterson had a personality disorder and abused cannabis, he did not suffer from a mental disease or defect. The defense psychiatrist testified that he believed that Peterson had bipolar disorder that should be considered in sentencing. The District Court sentenced Peterson to a total of 70 years in prison with 20 years suspended. Peterson's attorney obtained leave of court to withdraw as counsel.

¶16 In November 2010 Peterson appeared with new counsel and moved to withdraw his *Alford* pleas. Peterson contended that he should be allowed to withdraw his prior pleas because his mental state at the time of the pleas precluded him from knowingly and voluntarily making a plea decision; because he maintained his innocence to the charges against him; and because the District Court's colloquy with him was insufficient to determine whether the pleas were knowingly and voluntarily made.

¶17 The District Court conducted a hearing on the motion and received briefs. On December 14, 2011, the District Court issued a 30-page Opinion & Order denying Peterson's motion to withdraw the pleas. The District Court examined the medical evidence as to Peterson's mental capacity and found that the more persuasive and credible evidence demonstrated that Peterson was competent to enter the pleas. The District Court examined the change-of-plea hearing and found that Peterson did not

7

demonstrate mental instability, but understood what was happening and had a detailed understanding of his medication. The District Court found that Peterson had appeared to be alert and that his "responses and statements were articulate, logical and oriented." The District Court found that Peterson was thoroughly questioned before the pleas were accepted, and that his desire to maintain innocence was no ground to reject an *Alford* plea.

¶18 The District Court concluded that Peterson's *Alford* pleas were knowingly and voluntarily entered and that his motion to withdraw the pleas was without merit and should be denied. Peterson appeals.

¶19 On appeal Peterson raises the following issues:

¶20 Issue One: Did the District Court properly deny Peterson's motion to withdraw his *Alford* pleas?

¶21 Issue Two: Should this matter be remanded to the District Court to determine the amount of restitution due to the victim from Peterson for future counseling expenses?

## STANDARD OF REVIEW

¶22 A district court may allow a defendant to withdraw a guilty plea where good cause is shown. Section 46-16-105(2), MCA. If a guilty plea is involuntary, that constitutes good cause to allow it to be withdrawn. *State v. Usrey*, 2009 MT 227, ¶ 17, 351 Mont. 341, 212 P.3d 279. The standard of voluntariness of a guilty plea is whether the defendant was fully aware of the direct consequences of the plea, including the actual value of any commitments made to him by the court, prosecutor or his attorney. If so, the plea will stand unless it was induced by threats or improper promises. *State v. Warclub*,

8

2005 MT 149, ¶ 18, 327 Mont. 352, 114 P.3d 254, citing *Brady v. U.S.*, 397 U.S. 742, 90 S. Ct. 1463 (1970). A properly supported claim of ineffective assistance of counsel during the change of plea process can constitute good cause for withdrawal of a plea. *Burns v. State*, 2012 MT 100, ¶ 7, 365 Mont. 51, 277 P.3d 1238.

¶23 When a district court denies a motion to withdraw a guilty plea, this Court will review findings of fact to determine whether they are clearly erroneous, and conclusions of law to determine if they are correct. The ultimate question of voluntariness is a mixed question of fact and law that this Court reviews de novo to determine whether the district court was correct. *Warclub*, ¶ 24.

**DISCUSSION**

¶24 Issue One: Did the District Court properly deny Peterson's motion to withdraw his *Alford* pleas?

¶25 Peterson raises a number of issues on appeal, all to support the underlying contention that his *Alford* pleas were not voluntary and that he should be allowed to withdraw them. First, Peterson argues that he should be allowed to withdraw his pleas because both of his prior attorneys—the attorney who represented him at the trial/plea proceedings and the attorney who represented him on the motion to withdraw the pleas— provided him with ineffective assistance of counsel.

¶26 Peterson's motion in District Court to withdraw the pleas was based upon the arguments that he lacked the mental capacity to enter the pleas; that he maintained that he was innocent of the charges; and that the District Court's colloquy with him at the time of the pleas was inadequate. Peterson did not raise any issue concerning the alleged

9

ineffectiveness of his trial/plea attorney when he moved to withdraw his pleas, and the District Court did not consider or rule upon that issue. When a defendant appeals denial of a motion to withdraw a prior plea, this Court will not entertain new issues that were not raised in the District Court. *State v. Ostrerloth*, 2000 MT 129, ¶ 20, 299 Mont. 517, 1 P.3d 946 (no new issues may be raised on appeal of a motion to withdraw a plea); *State v. McFarlane*, 2008 MT 18, ¶ 12, 341 Mont. 166, 176 P.3d 1057 (this Court will not consider a claim of ineffective assistance of counsel at a change of plea proceeding when the claim was not raised in district court). Because Peterson did not raise the issue that his trial/plea attorney provided ineffective assistance, we decline to address this argument on appeal.[1]

¶27 Peterson next argues that he is entitled to withdraw the pleas because they were not knowingly and intelligently made. He argues that the District Court failed to inform him that that he could go to trial on the charge of aggravated kidnapping and pursue conviction of a lesser included offense of kidnapping.

¶28 Section 46-12-210, MCA, covers in detail the "advice" that a district court must give a defendant proposing to enter a guilty plea. A district court's advice to a pleading

---

[1] While we do not consider the ineffective assistance claim, we do note an argument made by Peterson's attorney on appeal. One of the contentions made by Peterson's attorney on appeal is that Peterson's trial/plea attorney was "out of money," causing his inability to adequately represent Peterson and causing him to act against Peterson's best interests by coercing him to plead guilty. Despite the strident accusations made in the briefing on Peterson's behalf on this point, there is no demonstrated factual support for it, much less any justification for characterizing it as an "insidious" factor in the case. The only cited support for this argument is that Peterson's trial/plea attorney requested in a pre-trial motion that the District Court order the State to pay for the cost of serving trial subpoenas because *Peterson*, not the attorney, was indigent. These rather serious accusations against Peterson's trial/plea attorney are completely unjustified and unfounded in the record.

defendant is constitutionally adequate if it covers the items in § 46-12-210, MCA. *State v. Otto*, 2012 MT 199, ¶ 18, 366 Mont. 209, 285 P.3d 583 (a district court is required to give the advice covered by § 46-12-210, MCA, and that advice is constitutionally sufficient for a voluntary plea). A district court is not required to advise the defendant about issues not covered by the statute such as the right to appeal, the right to speedy trial or the right to object to evidence. *Otto*, ¶ 19. There is no requirement that the district court provide advice about possible lesser included offenses. *Usrey*, ¶ 24; *State v. Swensen*, 2009 MT 42, ¶ 14, 349 Mont. 268, 203 P.3d 786. The District Court did not err to the extent that it failed to advise Peterson about the possibility of a lesser included offense to the charge of aggravated kidnapping.

¶29 Peterson next argues that his pleas were not knowingly and intelligently made, and therefore not voluntary, because the District Court did not advise him that he could go to trial and then appeal pre-trial orders, such as rulings on the admissibility of evidence and other issues. A District Court is not required to advise a pleading defendant about any rights to contest prior orders in a future appeal. *Otto*, ¶ 19. The District Court did not err to the extent that it failed to advise Peterson about the possibility of a future appeal of pre-trial orders.

¶30 Peterson next argues that he was entitled to withdraw his guilty pleas because the attorney who represented him on the motion to withdraw the pleas provided ineffective assistance of counsel. This Court evaluates claims of ineffective assistance of counsel under the test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861; *Bomar v.*

11

*State*, 2012 MT 163, ¶¶ 7-8, 365 Mont. 474, 285 P.3d 396. First the defendant must show that his attorney's performance was deficient by demonstrating that it fell below an objective standard of reasonableness. *Whitlow*, ¶ 14. There is a strong presumption that the attorney's performance fell within the wide range of reasonable professional assistance, *Whitlow*, ¶ 15, because there are "countless ways to provide reasonable assistance in any given case." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

¶31 Second, the defendant must show that his attorney's deficient performance prejudiced the defense. *Whitlow*, ¶ 10. This requires a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

¶32 This Court will consider the merits of a claim of ineffective assistance of counsel on appeal only if the record is sufficient to determine whether the attorney was ineffective. *State v. Briscoe*, 2012 MT 152, ¶ 10, 365 Mont. 383, 282 P.3d 657. Claims that are not based upon facts of record must be raised, if at all, in a proceeding for postconviction relief. *State v. Main*, 2011 MT 123, ¶ 48, 360 Mont. 470, 255 P.3d 1240.

¶33 Peterson claims that his plea withdrawal attorney was ineffective because he failed to argue that the District Court should not have accepted the plea to the charge of intimidation under § 45-5-203, MCA. Specifically, Peterson argues that there was no showing that he acted with the purposely or knowingly mental state required for that offense. The intimidation charge was based upon Peterson's actions during the extended stand-off with law enforcement officers at his residence. During the stand-off Peterson threatened that he was going to shoot one or more specifically identified officers who

12

were at the scene. He identified an officer by name, described where he was at the scene, and threatened to shoot him in the head.

¶34 We find that there is sufficient record-based information to allow review of this claim. There is no factual dispute about the intimidation incident, and at sentencing Peterson admitted to making the threat and to understanding how it could be understood as a "threat and intimidation to law enforcement." A defendant's mental state may be inferred from his acts and from the circumstances of the offense. *State v. Claussell*, 2001 MT 62, ¶ 31, 305 Mont. 1, 22 P.3d 1111 (purpose or knowing mental state). A reasonable inference from the facts was that Peterson intended to hinder performance by law enforcement and to prevent them from arresting him. This is sufficient to support the charge of intimidation. *State v. McCarthy*, 2004 MT 312, ¶ 47, 324 Mont. 1, 101 P.3d 288. As a matter of law, Peterson has failed to demonstrate that his withdrawal attorney's performance in this regard was deficient and that it fell below an objective standard of reasonableness. Peterson has not established that he received ineffective assistance of counsel regarding the plea to the charge of intimidation.

¶35 Peterson next claims that his withdrawal attorney was ineffective because he failed to present additional evidence at the hearing on the motion to withdraw about Peterson's mental state at the time of the pleas. At the hearing on the motion to withdraw, defense counsel presented both Peterson's testimony and the testimony of the defense psychiatrist who had previously examined Peterson and who had previously testified as to Peterson's mental condition. Defense counsel also submitted into evidence a letter from the defense

psychiatrist setting out the opinions of five other mental health professionals that Peterson was bipolar.

¶36    Peterson's contention on appeal is that his withdrawal attorney rendered ineffective assistance by only presenting one expert. The argument is that if withdrawal counsel had presented the live testimony of the other medical professionals described in the letter admitted into evidence, the District Court would have found Peterson to be bipolar. This entire argument turns on the assumption that if only the District Court had found that Peterson was bipolar then the original pleas would not have been accepted or, if accepted, Peterson would have been allowed to withdraw them. This is based upon nothing more than speculation presented as fact. The assumption underlying Peterson's argument is that a person diagnosed as bipolar is not competent to enter a plea in a criminal case, and, if he does, is entitled to withdraw it later. The issue below was not whether Peterson was bipolar. The issue was whether he was competent to enter the pleas to the charges. The experts for the State and for the defense agreed that Peterson was competent to participate in the plea proceedings.

¶37    The record is clear in this case that the District Court was very familiar with Peterson's mental state. Testimony and evidence on that issue were presented to the District Court prior to Peterson's entering the pleas, and again at the withdrawal hearing. Peterson does not contend on appeal that there was any new or different evidence, only that the evidence should be presented in a different way. In addition, even the defense psychiatrist who opined that Peterson was bipolar also rendered the expert opinion that

14

Peterson was competent to stand trial and that he was capable of forming the mental state required to be convicted of the charged offenses.

¶38 On the face of the record it is clear that Peterson's withdrawal attorney acted reasonably and consistently with an objective standard of reasonableness in presenting the motion to withdraw to the District Court. Peterson has wholly failed to demonstrate that his withdrawal attorney failed to provide effective assistance by presenting only one expert at the withdrawal hearing.

¶39 The record demonstrates that Peterson was fully aware of the direct consequences of the pleas and that they were knowingly and voluntarily given. He has failed to establish that there was good cause to allow him to withdraw his prior *Alford* pleas to the charges against him, and the District Court is affirmed.

¶40 Issue Two: Should this matter be remanded to the District Court to determine the amount of restitution due to the victim from Peterson for future counseling expenses?

¶41 The District Court ordered that Peterson be responsible for payment of the future counseling costs of the victim in an "unlimited amount." Peterson does not argue that he may not be held responsible for the counseling costs, but only that the District Court was required to specify the total amount of restitution. Section 46-18-244, MCA. The State agrees with Peterson's argument and agrees that this matter should be remanded to the District Court for a determination of the total amount of restitution for the victim's future counseling costs.

¶42 The District Court's order denying Peterson's motion to withdraw his *Alford* pleas to the charges against him is affirmed. This matter is remanded to the District Court for

15

the sole purpose of determining the amount of restitution for the victim's future counseling costs that Peterson is required to pay.


/S/ LAURIE McKINNON


We Concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT