

DA 13-0696

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 179N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

CLIVE WELLINGTON KINLOCK,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC-91-205(a)
Honorable Greg Pinski, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Clive Wellington Kinlock, self-represented; Shelby, Montana

       For Appellee:

       Timothy C. Fox, Montana Attorney General; Tammy K Plubell, Assistant
Attorney General; Helena, Montana

       John Parker, Cascade County Attorney; Great Falls, Montana

Submitted on Briefs:  May 1, 2014
Decided:  July 8, 2014

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Clive Kinlock (Kinlock) appeals from the September 25, 2013 order of the Eighth Judicial District Court, Cascade County, denying his motion to withdraw a guilty plea he entered on April 27, 1992.

¶3 As alleged by the State's Affidavit in Support of the Motion to File an Information, Kinlock abducted a woman at gunpoint from outside the bar where she worked on November 13, 1991. After attempting to obtain money from inside the bar, Kinlock forced the victim into her car and drove her around town before finally stopping the vehicle. Kinlock forced the victim to perform oral sex on him and then vaginally and anally raped her repeatedly over approximately two hours while threatening to shoot her. During the assault, Kinlock bit the victim on the back and arms numerous times, and sliced her neck with a hunting knife. The victim began screaming and struggling, ultimately managing to use her foot to hit the car horn. Kinlock agreed to put down the knife if the victim stopped screaming, which she did. Kinlock drove the victim back to the bar where he released her and threatened her not to contact law enforcement. The victim went to the hospital immediately after Kinlock left. Kinlock was identified by his

2

vehicle that was still parked at the bar, and during a photo lineup shown to the victim at the hospital that night. He was arrested the next morning.

¶4 Kinlock ultimately pled guilty to aggravated kidnapping, sexual intercourse without consent, and assault, for which he was sentenced to a combined total of 70 years. Charges of attempted deliberate homicide and robbery were dropped as part of the plea agreement. During the course of the proceedings, Kinlock was represented by Julie Macek (Macek), June Lord (Lord), and Nathan Hoines (Hoines). A written Acknowledgement of Waiver of Rights and a written Plea Agreement were signed by the prosecutor, defense counsel, and Kinlock, and filed with the court. The signature page of the Plea Agreement was crumpled and torn, but taped back together. However, at the change of plea hearing, Kinlock stated the factual basis for his guilty pleas under oath and attested to his understanding and knowing waiver of his rights. The court went through the Acknowledgment and the Plea Agreement line-by-line with Kinlock.

¶5 Shortly after sentencing in May 1992, Kinlock began filing various motions, complaints, and petitions attacking the voluntariness of his pleas, the effectiveness of his counsel, and the length and nature of his sentence. The Sentence Review Division made one change to his sentence with regard to parole eligibility, but left the remainder as imposed by the District Court. The Office of Disciplinary Counsel has reviewed at least two claims filed by Kinlock against his attorneys, the disposition of which is not before us. The Board of Pardons and Parole has twice reviewed and denied Kinlock's requests for parole. Additionally, the District Court has reviewed numerous motions to withdraw guilty pleas and petitions for postconviction relief throughout the years, as well as a

3

petition for commutation of sentence and deportation to his home country of Jamaica, and a request to have his prior criminal history removed from the PSI that was completed before his 1992 sentencing. This Court has considered appeals from these various proceedings as well as petitions for habeas corpus. *See Kinlock v. State*, 2012 MT 173N; *Kinlock v. Ferriter*, No. OP 11-0628, 2011 Mont. LEXIS 483 (Dec. 27, 2011); *Kinlock v. Mahoney*, No. OP 07-0730, 2008 Mont. LEXIS 240 (Jan. 23, 2008); *Kinlock v. State*, No. OP 06-0054, 2006 Mont. LEXIS 120 (Feb. 8, 2006); *In re Petition of Kinlock*, No. 93-108 (May 27, 1993).

¶6 Throughout these post-sentencing proceedings, Kinlock has alleged that attorneys Macek, Lord, and Hoines colluded with the prosecutor and forced him to sign the plea agreement and enter a guilty plea through coercion and false promises, and failed to investigate his defenses. He claims his counsel told him they knew he was innocent but that he would not receive a fair trial due to being a "big black man from Jamaica" in Montana, and that if he pled guilty he would only serve five years and then be deported.[1] He also claims that Macek taped the signature page of the Plea Agreement back together after he tore it up and stated he would not plead guilty, and that he ultimately pled guilty to the offenses based on Macek's threat that if he didn't "go along" she would withdraw as counsel and he would have to face trial alone. Kinlock has also alleged vindictive and selective prosecution, discrimination in sentencing, violations of due process and equal protection, and failure of the arresting officers to Mirandize him.

---

[1] In a 2013 letter from Lord to the Office of Disciplinary Counsel that Kinlock attached to his appellate briefing as proof that these conversations happened, Lord calls Kinlock's accusations "ludicrous."

4

¶7     The District Court held a hearing on Kinlock's first motion to withdraw his pleas in 1992, wherein Macek, Lord, and Hoines each testified regarding the voluntary nature of the plea agreement and disputed Kinlock's allegations of ineffective assistance of counsel. The court also reviewed several letters between counsel and Kinlock written during the representation that explained the conversations and actions surrounding the plea negotiations and defense investigation in detail, and ultimately denied the motion.

¶8     Additional background is necessary to frame the issue before us. After his arrest, Kinlock initially claimed that he and the victim were involved in a relationship that he ended the night of the alleged crimes. By written statement he claimed that after he and the victim had consensual intercourse, she attacked him with a folding knife or nail file and in his attempt to protect himself he bit her and may have scratched her with the weapon when he tried to take it away from her.[2] As noted in the letters referred to above, his counsel could not find a single witness who could verify that Kinlock had known the victim prior to the assault. In 1993, Kinlock only claimed to be innocent of the kidnapping and sexual intercourse without consent charges, and stated "I DO NOT WISH TO BE TRIED ON COUNT III ASSAULT BECAUSE THAT I A [sic] GUILTY OF." (Caps in original.) However, in a 1993 letter to the court, Kinlock admitted that "what I done was very inhuman like, only God knows what I'm going through at this time. I'm very happy I [didn't] kill anyone because I could not live with [myself] if that had happened in my case." Then in 1999, he wrote a letter asking the judge, "would you let

---

[2] The victim required stitches in her neck and hands, and testified at the change of plea hearing that a knife with approximately an 8-inch blade was used to cut her.

5

my victim know that I am truly from the depths of my being sorry about my senseless attack on her. She didn't do nothing to warrant my assault."

¶9 Presently before us is an appeal from a denial of Kinlock's motion to withdraw his guilty plea as to the sexual intercourse without consent conviction. Kinlock filed his present motion to withdraw his plea on January 25, 2013, and the District Court denied it on September 25, 2013. Kinlock does not appear to challenge the assault and kidnapping convictions herein. He claims that an attorney paid for by his brother to work on his citizenship status in 2009 uncovered "new evidence" that proves he is innocent of this charge, consisting of the medical report from the victim's hospital examination the night of the attack and the serologist report of the evidence collected that night. Though this evidence was disclosed by the prosecution, listed as exhibits for trial, and delivered to his counsel, Kinlock claims the information was withheld from him by his original counsel as part of their collusion with the prosecution and their plan to force him to plead guilty. He claims that, in addition to coercing him to enter a guilty plea through threats and false promises, his counsel disclosed only the "bad evidence" to him and withheld any information that would have exculpated him. Specifically, Kinlock argues the records do not reveal "any rape related injuries or treatment" that would prove a "prolonged two hour brutal" rape occurred, and that the notation in the serologist report that the "vaginal, rectal and oral samples were negative for semen" proves that no sexual assault took place, and thus he should be allowed to withdraw his guilty plea based on this new

6

evidence of "actual innocence," citing § 46-16-105(2), MCA (court may permit a defendant to withdraw a guilty plea where "good cause" is shown).[3]

¶10 When a district court denies a motion to withdraw a guilty plea, we review findings of fact to determine whether they are clearly erroneous, and conclusions of law to determine if they are correct. The ultimate question of voluntariness is a mixed question of law and fact that this Court reviews de novo. *State v. Peterson*, 2013 MT 329, ¶ 23, 372 Mont. 382, 314 P.3d 227.

¶11 The majority of claims raised in the present appeal, including the ineffective assistance of counsel and discriminatory nature of his sentence and prosecution, have been repeatedly addressed in past proceedings and will not be reconsidered herein. The only new information Kinlock presented is the alleged "actual innocence" evidence that no semen was found in the evidence collected during the victim's forensic exam and that there were no injuries consistent with a "two hour brutal" rape. The presence or absence of semen, or even lacerations and other injuries, does not prove "actual innocence" of the crime of sexual intercourse without consent. *See e.g. State v. Scheffer*, 2010 MT 73, 355 Mont. 523, 230 P.3d 462; *State v. Williams*, 2010 MT 58, 355 Mont. 354, 228 P.3d 1127 (defendants charged with sexual intercourse without consent based upon allegations of digital penetration). As the District Court concluded, "[f]ar from establishing innocence,

---

[3] It is unclear from Kinlock's briefing what he means by an absence of "rape related injuries or treatment." The record indicates that the victim went to the hospital immediately and reported to hospital staff that she had been raped, submitted to a forensic examination to aid in a criminal investigation of the charges, was tested for possible sexually transmitted diseases and pregnancy, and was treated for significant physical injuries. Additionally, before Kinlock agreed to plead guilty, his counsel moved *in limine* to exclude photographs of the victim taken at the hospital and of the victim's car due to being so "gruesome" that the probative value would be outweighed by prejudice to Kinlock.

[the] conclusions [in the medical records] are consistent with [Kinlock's] admissions at his change of plea hearing."

¶12 Following the District Court's denial of the motion to withdraw his plea, Kinlock filed a petition to require DNA testing of the biological samples taken during the initial investigation. Because the case was transferred to this Court upon appeal, the District Court has not ruled on that petition. Kinlock argues the petition should be granted by this Court in this proceeding, but we decline to address a matter not yet considered by the District Court in the first instance.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶14 Affirmed.

/S/ JIM RICE

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA