DA 22-0242

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 316N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ZECHARIAH JUSTIN DANIEL SMITH,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause Nos. DC-20-491, DC-21-242, DC-21-299, DC-21-433, DC-21-552
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy A. Hinderman, Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Roy Brown, Assistant Attorney General, Helena, Montana

          Matthew C. Jennings, Interim Missoula County Attorney, Meghann Paddock, Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  July 31, 2024

Decided:  December 23, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Zechariah Justin Daniel Smith (Smith) appeals from five judgments of the Fourth Judicial District Court sentencing him to a total of 30 years at Montana State Prison (MSP) with five suspended.[1] We affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

¶3 On September 10, 2020, the State charged Smith in Case 1 with Strangulation of Partner or Family Member in violation of § 45-5-215, MCA; Burglary in violation of § 45-6-204(1), MCA; and Assault in violation of § 45-5-201, MCA. Over the next several months, Smith was charged in five other cases—mostly assaults or threats of assault he committed on peace officers and others while in detention and out on bail. On April 27, 2021, the State charged Smith in Case 3 with Criminal Mischief in violation of § 45-6-101(1), MCA; Attempted Assault on Peace or Judicial Officer in violation of §§ 45-5-210 and -4-103, MCA; and Assault with Bodily Fluid in violation of § 45-5-214,

---

[1] For ease of reference, we will refer to DA 22-0242 (DC-20-491 in the District Court) as Case 1; DA 22-0243 (DC-21-229 in the District Court) as Case 2; DA 22-0245 (DC-21-242 in the District Court) as Case 3; DA 22-0308 (DC-21-433 in the District Court) as Case 4; and DA 22-0246 (DC-21-552 in the District Court) as Case 5. Smith also originally appealed to this court under DA 22-0244 (DC-21-235 in the District Court), which was consolidated but dismissed upon Smith's motion (Case 6). We take judicial notice of the District Court record in this appeal.

2

MCA.  On May 4, the State charged Smith in Case 2 with Assault on Peace or Judicial Officer in violation of § 45-5-210, MCA.  On July 26, the State charged Smith in Case 4 with Assault with Weapon in violation of § 45-5-213, MCA.  Finally, on September 27, the state Charged Smith in Case 5 with Possession of Deadly Weapon by Prisoner or Youth in Facility in violation of § 45-8-318, MCA; Intimidation in violation of § 45-5-203, MCA; Assault with Weapon in violation of § 45-5-213, MCA; and Criminal Mischief in violation of § 45-6-101, MCA.[2]

¶4     On September 14, 2020, Smith appeared for an arraignment in Case 1.  His attorney requested a few more days so she could discuss his rights with him and the court postponed the arraignment.  On his own, Smith requested that he be heard on bail that day.  On September 16, Smith's attorney filed an Acknowledgment of Rights in Case 1 in which she certified that she and Smith had fully discussed his legal rights, including the right to a jury trial and to be represented, and that the court may impose a sentence without the possibility of parole or may place restrictions on his eligibility for parole and may order restitution.  At his rescheduled arraignment, his attorney discussed the Acknowledgment of Rights they had gone over, and the court asked if he had any questions regarding these rights.  Smith did not.

¶5     On April 28, 2021, Smith signed and submitted two additional Acknowledgments of Rights in Case 3 and Case 6 acknowledging the same rights.  Another defense attorney certified they had read and fully discussed these rights with Smith as well.  On August 10,

---

[2] On April 26, 2021, the State also charged Smith with Intimidation, in violation of § 45-5-203, MCA.  Smith does not appeal this conviction.

2021, Smith had an arraignment in Case 4. His attorney said he had been unable to talk with Smith over the weekend, but that "[Smith] certainly is aware of his rights" and he would feel comfortable with entering a plea on the new charges. The District Court recognized that Smith had already acknowledged and discussed his rights in three other cases and asked if he "ha[d] any questions about what [his] rights are on this new charge." Smith did not have any and entered a not guilty plea.

¶6 On May 25, at an arraignment on Cases 2, 3, and 6, the court asked Smith if his counsel had explained his rights to him and whether he had any questions about those rights. Smith responded: "No, I have no questions. [My counsel] explained [them] to me."

¶7 On August 31, Smith appeared for a hearing. His counsel was not present as he had fallen ill. Smith notified the court that he was firing the public defender and hiring private counsel but wanted to plead guilty in Case 1. The court advised him that since counsel still represented him, it could not change his plea without counsel present. Smith also discussed that he felt like he was being targeted at the detention facility because of the damage he had caused in his cell (Case 3) and that "just having contact with the alleged victims and the prosecution witnesses is creating an environment where I'm being coerced into pleading guilty to these charges." The court advised him that if these allegations were true, they were certainly illegal, and Smith should have his attorney contact the attorney general's office to investigate the alleged illegalities. Smith responded "[a]ll right" and then asked about access to legal research while he was in solitary confinement. The court responded that he would grant that request if Smith was pro se but that he did not need the access while represented.

¶8     On September 13, 2021, Smith appeared for a status conference on Case 1. His counsel was still ill. Smith requested to fire counsel and proceed pro se in all of his cases, and "just like last time, I'm just trying to switch my plea to guilty" in Case 1. The District Court responded that it would not take a guilty plea without Smith talking to an attorney about it. The court also questioned why Smith was appearing remotely from the jail in a restraining jacket. Smith acknowledged it was a precaution because he was a dangerous inmate and had "been causing a little bit of a raucous here. But it's not because of mental health issues whatsoever." He told the court that he had spoken with multiple mental health professionals over the last year, and each had cleared him and said he was of totally sound mind. The court advised Smith that it had to make sure he was of sound mind to enter a guilty plea to which Smith responded that he was and had been trying to plead guilty for two months with multiple attorneys as counsel. The court asked if Smith understood that if he pleaded guilty with no plea agreement, "whatever I decide [in sentencing] goes?" Smith responded, "I absolutely understand that, yes." The District Court affirmed that Smith was willing to proceed even knowing that he could not back out of the plea no matter what the court sentenced him to. Smith said absolutely and even discussed waiving his appellate rights. The court confirmed that Smith would be waiving any arguments he might have about errors by the State or his attorneys. Smith responded he absolutely understood and wanted to plead guilty to take accountability for his actions.

¶9     The State interjected at this point and asked that the hearing be rescheduled for the next day to give Smith another opportunity to speak with counsel and make sure that his plea was voluntary and intelligent. The court stated that Smith's actions seemed voluntary

5

and intelligent but agreed that Smith should have one more opportunity to speak with counsel before entering a guilty plea.[3] Smith's other attorney arrived and said that she and Smith had spoken multiple times about proceeding pro se and pleading guilty and that she felt comfortable with it. She informed the court that the public defender's office had done multiple mental-health evaluations and Smith had been cleared. The court then told Smith it would hold him to the standards of an attorney while representing himself and asked if Smith had sufficient knowledge of the law to represent himself. Smith responded that he did "for [Case 1] because I'm just pleading guilty" but asked that the jail make more legal resources available for his other cases.[4] After discussing how to get Smith access to legal resources while in solitary confinement, the court continued the colloquy with Smith. The court asked Smith if he had any questions about his rights or what he would be giving up by pleading guilty. Smith did not have any questions and then acknowledged that he was clear headed and understood what he was doing. Smith agreed that he was adequately prepared to enter a plea and that the sentencing decision was in the court's discretion up to 25 years in prison and upwards of a $100,000 fine for the three counts he faced in Case 1. Smith then described the crimes he committed in Case 1. The court heard evidence that Smith may have had a justifiable use of force defense and questioned Smith to make sure he still wanted to plead guilty and abandon his use of that possible defense at trial. After

---

[3] Smith also asked if the court would consider waiving a presentence investigation (PSI).

[4] Smith was in solitary confinement due to numerous other assaults he committed within the jail (the subject of some of his other more recent cases) and had limited access to resources more readily available to other inmates.

speaking with Smith further, the court said it did not believe there was a factual basis for the burglary charge in Case 1 and dismissed it but accepted the guilty pleas for strangulation and assault.

¶10 Since the burglary charge was dismissed, Smith requested that the PSI be waived and for an expedited sentencing of the new maximum sentence of five years so that he could get to MSP and start working on good time towards a possible parole board hearing. The State responded that that might be a hassle with his other cases and hoped that the parties might reach an agreement on Smith's other cases by the time of sentencing. Smith responded that he had written a letter to the State requesting a global plea agreement that he had been pushing for "three or four months" and that he did not have high demands and only wanted to get them done as quickly as possible. The court set another status conference for September 21 to allow the parties to try to reach agreement.

¶11 The next day, on September 14, Smith had an omnibus hearing on Case 4. Smith reaffirmed that he wanted to proceed pro se in the remainder of his cases and reminded the court that he still needed access to legal resources. Despite his acknowledgment the day before that he had been causing a "raucous" at the jail and was dangerous, Smith now claimed that the jail was denying him access to pencils and other things that could be used as weapons for "no justifiable reason whatsoever." The court noted that Smith had caused these issues himself but nevertheless said that he had to be given appropriate materials to defend himself now that he was pro se. The court acknowledged that Smith was not the only self-represented inmate to have these issues and hoped to speak to the jail about potential solutions before Smith's September 21 hearing. At the September 21 hearing, as

7

a solution the court appointed standby counsel that would be able to access materials for Smith from outside of his solitary cell and continued the hearing for another week. The State said that it was working on a global plea offer at that time, in accordance with Smith's wishes.

¶12 At the next hearing, on September 28, Smith stated that he had received the State's global plea offer the day before. The State had requested an "open" plea deal of 10 to 25 years with no parole restriction. Smith did not feel comfortable with that deal and extended a counteroffer of a binding deal of 25 years with 15 suspended along with fines, court fees, anger management, and drug treatment in MSP. The State responded that it would discuss the counteroffer with Smith and the court continued the hearing for another week. On September 29, the jail provided Smith with a tablet on which to conduct legal research.

¶13 On October 5, Smith appeared for the next hearing and discussed how he and the State had not been able to agree to a plea deal so he had hired private counsel. Additionally, he was arraigned during that hearing in Case 5. After reading the charges against him, the District Court stated: "Now, sir, we have previously gone over your rights with you in other matters. Do you recall what those rights were or do you want me to go over them with you again?" Smith responded "[n]o, I understand my rights." The court appointed the public defender for him in Case 5 and set a hearing on all remaining cases for the next week. Smith again brought up a global plea agreement, to which the State responded that he had been provided with the State's best offer which encompassed all of Smith's cases.

¶14 At the October 12 hearing, the Office of Public Defender appeared for Smith on Case 5 and confirmed that standby counsel was still being sought for Smith in his other

8

cases. Smith requested a date for a hearing to withdraw his guilty plea in Case 1 for good cause. The court responded that it would take up the issue of *withdrawing* his guilty plea after Smith had conferred with standby counsel. Smith made no mention of wanting to plead guilty in his other cases at this hearing. The State's global plea offer was set to expire on October 15. The court set a hearing on all of Smith's cases for October 26.

¶15 On October 19, Smith sent a "kite"[5] to the prosecutor asking to "be in court this Thursday or Friday to change plea on all cases." The court set a hearing for Friday, October 22. Smith and a public defender, Mandelko, appeared. Mandelko advised that standby counsel had still not been appointed in one of Smith's cases, to which Smith replied he would fire them. Mandelko advised Smith "not to take any action in this case without an attorney to assist him." Smith replied "[d]uly noted." As part of the court's colloquy, it asked Smith if he had consulted with an attorney on his decision to plead guilty in all cases. Smith responded that he did not need to as he had put a lot of thought into pleading guilty and would not put stock into what an attorney would have to say. The court responded that it knew Smith had indicated a desire to plead guilty repeatedly over the past several hearings and believed he certainly had had ample opportunity to come to this decision but advised him that there was no plea bargain in these cases. Smith agreed that the State's plea offer had already expired and the court asked if he understood that without a plea bargain "whatever I decide [on sentencing] is what you're gonna be stuck with?" Smith said absolutely and agreed that was all right with him. The court then discussed the

---

[5] A term used to describe correspondence or requests from an inmate in jail.

9

Acknowledgment of Rights that Smith had filled out and asked if he remembered his rights and whether Smith had any questions about them. Smith also understood that he had the right to an attorney and agreed that he was acting voluntarily, knowingly, and willingly in giving up that right. The court then advised that Smith was "looking at a whole pile of [charges]. And . . . I could be sentencing you to something that might take as much of the rest of your life. . . . And . . . fines that probably total several hundreds of thousands of dollars." Smith understood. The court then asked Smith one more time if he had any questions about his rights and his desire to proceed without an attorney before taking his plea in Case 2. Additionally, before accepting his plea in Cases 4, 5, and 6, the court again asked Smith if he had any questions about his rights and his desire to proceed without an attorney. Before accepting his plea in Case 3, the court also asked if Smith understood that each of his sentences could be made to run consecutive to each other, significantly increasing the length of time Smith would be in prison.

¶16    During his change of plea in Case 4, Smith said he was pleading guilty on all of these cases because he would be found guilty at trial anyways because he did do them and he wanted to start serving his sentence. However, he noted that he had recently assaulted another peace officer and sought an "informal . . . plea deal" with the State to not charge him with additional charges if he pleaded guilty in his remaining cases. The State confirmed that it had additional cases referred to it, "including one from yesterday, in which he assaulted a detention officer at the jail again" but that if Smith continued to plead guilty it would not seek additional charges as long as Smith did not commit any additional

10

criminal conduct between the plea and sentencing. Smith agreed to this deal. The court also informed Smith that he had possible defenses in Case 4, which he wished to waive.

¶17 In Case 5, the Court again asked if Smith wished to proceed without an attorney notwithstanding Mandelko's earlier advice. Smith did. After hearing the factual basis for the plea, the court dismissed Count II of Case 5—Intimidation—but accepted the remaining pleas. The court set sentencing for the next week in accord with Smith's wishes. Smith's PSI indicated that he still owed restitution on a prior sentence and recommended a parole restriction of at least fifteen years in addition to consecutive sentences.

¶18 At sentencing for his six cases on October 29, Smith agreed that $5,305.98 was the appropriate amount of restitution for damage he had caused in two of his cases. He also waived his right to have counsel again and proceeded pro se in sentencing but understood that Mandelko was standing by if he desired assistance. The State requested a net sentence of 25 years, none suspended, with a 15-year parole restriction as recommended by the PSI due to the numerous violent crimes he pleaded guilty to. Smith responded that he had tried to enter guilty pleas three weeks prior on October 12 but that the court would not let him without standby counsel. As such, Smith agreed a 25-year sentence was appropriate but argued that the recommended parole restriction was unfair and would leave him in the same position he is in now when he was released. Smith also notified the court that he could pay his restitution in full before leaving the courtroom that day.

¶19 In Case 1, the court sentenced Smith to five years at MSP with a five-year parole restriction and a $350 fee for pretrial supervision. In Case 2, the court sentenced Smith to five years with a parole restriction consecutive to Case 1. In Case 3, the court ordered

11

$4,365.98 in restitution and imposed 10 years consecutive to Cases 1 and 2 without any further parole restrictions. In Case 4, the court sentenced Smith to 15 years consecutive to Cases 1 and 2 but concurrent with Case 3. In Case 5, the court sentenced Smith to a total of 20 years, five suspended, consecutive to Cases 1 and 2 but concurrent with Cases 3 and 4 and $940 in restitution.[6]

¶20 Smith moved to withdraw all of his guilty pleas on March 22, 2022. First, Smith argued he should be allowed to withdraw his guilty pleas because the guards at the Missoula County detention facility were allegedly withholding privileges unless he pleaded guilty to all charges. Second, Smith alleged that he was incompetent to stand trial or plead guilty. The court denied Smith's motion without a hearing, reasoning that Smith completely failed to sustain his burden of proof by offering only conclusory, self-serving declarations that his pleas were coerced. Smith filed a motion to reconsider and cited only to the fact that he appeared in court via zoom wearing a "suicide gown" and was in an isolation cell "for fear that he was in danger of harming himself." He asserted no evidence of the alleged coercion to induce his guilty pleas. The court denied it as Smith raised nothing new in the motion. Smith appeals.

¶21 A district court may allow a guilty plea to be withdrawn "for good cause shown." Section 46-16-105(2), MCA. Involuntariness constitutes good cause. *State v. Peterson*, 2013 MT 329, ¶ 22, 372 Mont. 382, 314 P.3d 227. Threats or improper promises make a

---

[6] In Case 6, the court sentenced Smith to five years concurrent with Case 2, which is not appealed.

plea involuntary. *Peterson*, ¶ 22. The burden is on the defendant to show the plea was involuntary. *State v. Terronez*, 2017 MT 296, ¶ 27, 389 Mont. 421, 406 P.3d 947.

¶22 We review a district court's findings of fact for clear error and conclusions of law for correctness in a denial of a motion to withdraw a guilty plea. *Peterson*, ¶ 23. The ultimate question of voluntariness is a mixed question of fact and law that we review de novo. *Peterson*, ¶ 23. Numerous case-specific factors, such as an inadequate colloquy, newly discovered evidence, intervening circumstances, the benefits obtained from the plea bargain, and the withdrawal's timeliness are relevant to ascertain whether good cause is shown to withdraw a guilty plea. *Terronez*, ¶ 32.

¶23 Smith first argues that the District Court failed to fully advise him of the constitutional rights he was waiving or the direct consequences of his guilty pleas to ensure that he knowingly and intelligently entered his pleas. Smith did not argue this before the District Court and he has thus failed to preserve the issue for appeal. *See, e.g., State v. Kellames*, 2002 MT 41, ¶ 13, 308 Mont. 347, 43 P.3d 293, *overruled in part on other grounds by State v. Deserly*, 2008 MT 242, ¶ 12 n.1, 344 Mont. 468, 188 P.3d 1057. Nor do we find that, on the basis of this record, plain error review is warranted. *See State v. George*, 2020 MT 56, ¶ 5, 399 Mont. 173, 459 P.3d 854.

¶24 Smith contends that he pleaded guilty without any benefit from a plea agreement, but fails to note that while pleading guilty in Cases 2 through 6 Smith initiated a plea deal with the State that guaranteed he would not be charged with any further crimes, including a case referred to the prosecutor from the previous day "in which he assaulted a detention officer at the jail again."

13

¶25   Smith also alleges that he pleaded guilty without the advice or assistance of counsel. While this is a factor to consider, Smith was repeatedly offered counsel and repeatedly advised not to proceed without counsel, and he chose to proceed pro se and to proceed in pleading guilty. The District Court was "impressed with his lucid demeanor and presentation" and allowed Smith to proceed pro se only upon Smith's repeated requests against all advice. Smith further alleges he was never informed of his rights. But Smith and his attorney went over his rights at the beginning of at least three of his cases and signed an acknowledgment so stating those rights. His attorney guaranteed the court that Smith "certainly is aware of his rights" and Smith repeatedly advised the court that he understood his rights upon numerous occasions.

¶26   Smith also argues he was not informed that the court could order him to pay restitution or that it may be able to order a sentence without the possibility of parole. Even disregarding the Acknowledgment of Rights that Smith signed multiple times, we find that Smith was aware of the possibility of restitution as his PSI showed that he still owed restitution in a prior case. Additionally, we have held that a District Court need not advise a defendant of the possibility of a discretionary parole restriction. *State v. Thomas*, 285 Mont. 112, 122, 946 P.2d 140, 146 (1997). Smith urges us to overrule this holding but has not shown that this decision was manifestly wrong.

¶27   Smith next argues that his decision to plead guilty was induced by improper threats. This argument was preserved below; however, we hold that the District Court did not err in finding that none of Smith's allegations were supported by the record. Smith argues the District Court erred because he had made "repeated outcries regarding improper promises

14

by jail staff," without citing any instances in the record. Our review of the record shows two instances, at a May 25, and an August 31, 2021 hearing, where Smith alleged that improper promises were being made in exchange for a guilty plea.

¶28 On May 25, Smith's counsel moved for a court order to transfer Smith to another detention facility because he was in isolation so he would not have contact with witnesses or victims of the crimes he had committed in the detention facility. The court denied the motion as there was not enough information at the time to understand whether officers were mistreating Smith. Smith posted bond on July 14 but was rearrested in August upon the State's Petition to Revoke Defendant's release in Case 1.

¶29 Back in jail, the hearing on August 31 began with an officer telling the court that Smith needed to attend court without others present and with extra security because of the danger he posed. Smith's attorney was ill at the time, but Smith asked the court to transfer him to another jail:

> because I have six alleged victims that currently work at this county jail and in the unit I'm housed in, and 18 prosecution witnesses that I listed in my paperwork. And I feel that I'm being, like, heinously targeted. And I've been coerced by some of the administration to plead guilty to especially the charge of tearing up the padded cell, allegedly. And I'm getting my privileges and rights taken because I won't plead guilty and because I won't, you know, pay for their padded cell.

Smith then clarified that there were not actual instances of coercion but that "just having contact with the alleged victims and the prosecution witnesses is creating an environment where I'm being coerced into pleading guilty to these charges." The court advised him that if people at the jail were intimidating or coercing him it would "definitely [be] illegal" and

15

told him how he could substantiate his claims. Smith said "[a]ll right" and moved on to his next issue. He never brought these allegations up again.

¶30 The rights Smith asserts he was being deprived of include issues with his solitary confinement. Because of his confinement, he was not allowed access to legal resources, pencils, tablets, or other materials that could be used as weapons while represented by counsel. Smith argued that the jail was denying him access to pencil and paper and things like that for "no justifiable reason whatsoever." While represented by counsel, the court reasoned that Smith did not need access to these resources and that his solitary confinement stemmed from his own actions in the detention facility. However, once Smith became pro se, the court worked with the detention facility to make sure Smith had appropriate access to the materials he needed to defend himself (including access to legal research and to the telephone to engage in plea discussions with the State). Smith does not allege that these were inadequate. Further, Smith acknowledged that he was a dangerous inmate and that his solitary confinement stemmed from his numerous assaults within the detention facility and the chaos that he was causing, not as part of any harassment or coercion by detention officers.

¶31 "[C]onsidering all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 1469 (1970), the evidence in the record shows that the District Court did not clearly err in finding that Smith's allegations were self-serving and unsupported. Smith was given numerous opportunities to substantiate his claims and did not overcome his burden by providing any evidence of any ill treatment to coerce him into pleading guilty. On this record, we cannot say that Smith's plea was

16

involuntary. *See State v. Humphrey*, 2008 MT 328, ¶¶ 22–23, 346 Mont. 150, 194 P.3d 643 (while our analysis must take into account the defendant's subjective perceptions, "[i]n the absence of substantial objective proof showing that a defendant's mistaken impressions were reasonably justified, subjective impressions alone are not sufficient grounds on which to vacate a guilty plea. Rather, the burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression." (internal quotation omitted)).

¶32 Finally, Smith argues that the District Court imposed illegal sentences in Cases 2 through 5 by unlawfully denying him credit for presentencing incarceration and for a $350 fee imposed in Case 5 that was not orally imposed. The State concedes these issues. Thus, we reverse and remand for the District Court to strike the $350 fee in Case 5 and grant credit for time served as calculated in Smith's opening brief, pages 50 to 51.

¶33 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶34 Affirmed in part, reversed in part, and remanded for proceedings consistent with this Opinion.

/S/ MIKE McGRATH

17

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE