
DA 08-0050

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 227

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

RICKY JOE USREY,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DC-99-21
Honorable Katherine M. Irigoin, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jim Wheelis, Chief Appellate Defender; Roberta R. Zenker, Assistant
            Appellate Defender, Helena, Montana

        For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
            Assistant Attorney General, Helena, Montana

            Mike Weber, Richland County Attorney, Sidney, Montana

                        Submitted on Briefs:  November 26, 2008

                                  Decided:  July 1, 2009

Filed:

            _____
                          Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Ricky Joe Usrey was convicted by his plea of guilty of the offense of sexual intercourse without consent. He later moved to withdraw his guilty plea. The Seventh Judicial District Court, Richland County, denied Usrey's motion and he appeals.

¶2 Usrey raises the following issues on appeal:

¶3 Issue 1: Did the District Court err in concluding that Usrey's plea of guilty was voluntary?

¶4 Issue 2: Did the District Court err in admitting the testimony of Usrey's former attorney?

## BACKGROUND

¶5 Pursuant to an order transferring the case from Youth Court to District Court, the State filed an information charging Usrey, who was 17 years old at the time, with sexual intercourse without consent for forcing himself on a 6-year-old girl.

¶6 Usrey, after a consultation with his appointed counsel, pled not guilty to the charge on August 17, 1999. Later, again with the advice of counsel, Usrey entered into a written plea agreement wherein he acknowledged, *inter alia*, that he waived the right to have the jury instructed on a lesser offense, that the court was not bound by the State's recommendations, and that he could be sentenced to the maximum penalty provided by law.

¶7 At the continued arraignment, where Usrey changed his plea to guilty, the District Court confirmed he read through the agreement carefully, went over it with his attorney,

2

and understood it. The court outlined the agreement's waiver of rights provisions and asked Usrey if he understood the consequences of the agreement. Usrey said he understood what rights he was waiving and described why he thought he was guilty. Further details of the plea colloquy are discussed below. The District Court then committed Usrey to the Montana Department of Corrections (DOC) for placement in an appropriate facility or program for a period of 15 years, with all but five years of the commitment suspended. After serving four years at Montana State Prison, Usrey was released to the suspended portion of his commitment upon the conditions he attend sex offender treatment, register as a sex offender, notify his probation officer if he changed his residence, and abstain from alcohol and drugs.

¶8 Several months after his release from prison, the District Court revoked Usrey's probation and recommitted him to DOC for ten years with the entire commitment suspended. A couple of months later, Usrey again violated the conditions of his probation. As a result, the District Court revoked his DOC commitment and again recommitted him to DOC for ten years, with all but five years suspended. Usrey then filed the motion to withdraw his guilty plea at issue in this case. His motion alleged that he entered his plea involuntarily because he is "mentally retarded" and his attorney failed to sufficiently explain the plea agreement to him. He alleged he did not understand the agreement he signed seven years earlier, and the District Court did not adequately explain to him the rights he was waiving at the continued arraignment.

¶9 The District Court conducted a hearing on Usrey's motion to withdraw his guilty

3

plea. At the hearing, a psychologist retained by Usrey's attorney to evaluate his "limited cognitive and academic abilities," testified Usrey had below average intelligence, with an IQ of 71, and read at a second-grade level, but is not "mentally retarded." The psychologist opined that for Usrey to fully understand the plea agreement, someone would have to verbally communicate its details to him.

¶10 The State offered the testimony of Thomas Halvorson, the attorney who represented Usrey during plea negotiations and at the continued arraignment. Usrey objected to Halvorson testifying on the grounds that it would violate his attorney-client privilege. The District Court overruled the objection. Halvorson testified that he explained the plea agreement to Usrey in a series of phone calls, letters, and face-to-face meetings.

¶11 The District Court denied Usrey's motion to withdraw his guilty plea, concluding that Halvorson had sufficiently explained the written plea agreement to him, the sentencing court's colloquy with him when he pled guilty was adequate, and Usrey was mentally competent to enter the guilty plea. Usrey appeals, reiterating his claims that the plea colloquy was inadequate, that he did not understand to what he was pleading, and that the District Court erred in relying on the testimony of Halvorson because his testimony violated the attorney-client privilege.

## STANDARDS OF REVIEW

¶12 We review the denial of a motion to withdraw a guilty plea de novo. *State v. Tyler*, 2009 MT 75, ¶ 10, 349 Mont. 461, 204 P.3d 685; *State v. McFarlane*, 2008 MT

4

18, ¶ 8, 341 Mont. 166, 176 P.3d 1057.

¶13   We accept a district court's findings of fact on a motion to withdraw a plea, unless they are clearly erroneous. Findings of fact are clearly erroneous if they are unsupported by substantial evidence, the district court misapprehended the effect of the evidence, or a review of the record convinces this Court that the district court made a mistake. *McFarlane*, ¶ 8. We review the district court's conclusions of law for correctness. *McFarlane*, ¶ 8.

¶14   We review issues involving the admission of evidence for an abuse of discretion. *State v. Foston*, 2009 MT 191, ¶ 10, 351 Mont. 85, ___ P.3d ___.

## DISCUSSION

¶15   *Issue 1: Did the District Court err in concluding that Usrey's plea of guilty was voluntary?*

¶16   On appeal, Usrey first claims his plea was not voluntary because when he pled guilty, the District Court did not advise him of the maximum possible punishment for sexual intercourse without consent.

¶17   A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent. *Tyler*, ¶ 11; *State v. Lone Elk*, 2005 MT 56, ¶ 13, 326 Mont. 214, 108 P.3d 500 (citing *Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 1609 (1998)). The ultimate test for withdrawal of a guilty plea is whether it was voluntary. *Tyler*, ¶ 11; *Lone Elk,* ¶ 14. For a defendant's guilty plea to be voluntary, he must be "'fully aware of the direct consequences of the plea, including the value of any commitments made to him

5

by the court, the prosecutor or his own counsel.'" *Lone Elk*, ¶ 21 (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970)). In our assessment of voluntariness, we consider the facts of each case, which may include the adequacy of the court's interrogation of a defendant who pleads guilty. *State v. Swensen*, 2009 MT 42, ¶ 12, 349 Mont. 268, 203 P.3d 786. For a plea to be voluntary, the defendant must be mentally competent and able to understand the plea. *Lone Elk*, ¶ 21. Montana law requires a district court to determine that a defendant understands certain consequences of his guilty plea, such as the maximum penalty for the defendant's crime. Section 46-12-210(1)(a)(iii), MCA.

¶18 Although the written plea agreement does not state the specific maximum penalty upon a conviction of sexual intercourse without consent and the District Court did not state the penalty when Usrey pled guilty, the District Court did ask Usrey if he was mindful of the maximum penalty for sexual intercourse without consent. He said he was. The maximum penalty is clearly stated in the information. The transcript of the continued arraignment indicates that the District Court had previously discussed the maximum penalty with Usrey, and he does not argue that this is not so. Further, the plea bargain called for a sentence far less than the maximum penalty. The sentence imposed, that Usrey bargained for, is far less than the maximum. We conclude Usrey understood the maximum penalty for sexual intercourse without consent when he pled guilty.

¶19 Usrey next argues that his plea was not voluntary because the District Court did not advise him at the time he changed his plea to guilty that if it did not accept the plea

6

agreement, he might not be allowed to withdraw his plea. Section 46-12-210(1)(d), MCA, provides:

> Before accepting a plea of guilty or nolo contendere, the court shall determine that the defendant understands . . . that if the defendant pleads guilty or nolo contendere in fulfillment of a plea agreement, the court is not required to accept the terms of the agreement and that the defendant may not be entitled to withdraw the plea if the agreement is not accepted pursuant to 46-12-211[.]

¶20 Usrey's plea agreement states that the court is not bound by the plea agreement and that if Usrey chose to plead guilty, all that remains for the court to do is sentence him. The District Court advised Usrey that if he pled guilty there would be no trial, and again reminded him that the court was not bound by the agreement. Usrey was, in essence, advised that his guilty plea would be final, even if the court did not accept the sentencing recommendation. The District Court accepted the terms of the plea agreement and imposed the bargained-for sentence.

¶21 Any variance from the required plea bargain procedure that does not affect the substantial rights of the defendant must be disregarded. Section 46-12-213, MCA. We conclude Usrey was not misled to his detriment simply because the District Court did not tell him, using the exact words of § 46-12-210(1)(d), MCA, that he might not be allowed to withdraw his guilty plea if the plea bargain was rejected.

¶22 Usrey also argues his plea was involuntary because the District Court did not advise him that by pleading guilty he waived the right to submit a jury instruction on a lesser included offense. Usrey argues that even though this Court has not held that sexual

7

assault is a lesser included offense, we should do so in this instance. Usrey goes on to state it is impractical to commit the offense of sexual intercourse without consent upon a 6-year-old because penetration is a required element of the offense. Sections 45-2-101(66), 45-5-503(1), MCA (1997). Therefore, a jury might find sexual contact but no penetration, and thus he could have been convicted of sexual assault. Usrey thus argues the District Court committed reversible error in not advising him that by pleading guilty he waived his right to submit instructions concerning the lesser included offense of sexual assault.

¶23 Leaving the question of whether sexual assault is a lesser included offense of sexual intercourse without consent for another day, Usrey's argument that he was entitled to an instruction on sexual assault because penetration of a 6-year-old is impractical, is nothing short of absurd. The affidavit in support of the motion for leave to file the information graphically sets forth the required penetration element of sexual intercourse. Further, Usrey's statement, noted in ¶ 25, completely debunks his argument.

¶24 In the recent *Swensen* decision, this Court affirmed a district court's denial of a motion to withdraw a guilty plea even though the defendant had not been specifically advised about possible lesser included offenses because the defendant could not demonstrate that the factual circumstances warranted a lesser included offense instruction. *Swensen*, ¶ 14 (interpreting § 46-16-607(2), MCA). Usrey has completely failed to demonstrate he would be entitled to a lesser included offense instruction on sexual assault. Although the facts of this case differ from *Swensen*, we conclude there is

8

no possibility that Usrey would be entitled to an instruction on the lesser included offense of sexual assault. It follows that because a lesser included offense instruction would not have been warranted under the facts, any error in the court's failure to advise Usrey of such a possibility was harmless.

¶25 Usrey next contends the District Court failed to establish a factual basis for his guilty plea, as required by § 46-12-212(1), MCA. When he pled guilty, the District Court asked Usrey what he did that makes him guilty of the offense. Usrey responded:

> USREY: Um, whatever the girl said is true, I guess ah, because I mean, yeah I did take em swimming, yes I did do that, I mean they said I did.
>
> COURT: When you say you did what they said you did, that doesn't really tell me anything, because on the record that's not real clear. Tell me what you did.
>
> USREY: Um, I touched my penis to their vagina and all that. Ah they said I licked em and all that, I did that. Um. That's all.
>
> COURT: One of the statements alleged that you placed your penis in the girl's mouth, did you do that?
>
> USREY: Yes sir.

¶26 Usrey claims on appeal that the factual basis for his plea was not established because the District Court did not specifically ask whether he acted purposely or knowingly when he assaulted the child.

¶27 A district court must ascertain from admissions made by the defendant at the plea colloquy that his acts, in a general sense, satisfy the requirements of the offense to which he is pleading guilty. However, to establish a factual basis for a guilty plea, a district

court need not solicit an admission of every element of the offense. *State v. Frazier*, 2007 MT 40, ¶ 20, 336 Mont. 81, 153 P.3d 18. Section 46-12-212(1), MCA, requires the court to solicit admissions from a defendant regarding his actions that constitute the offense charged, which is exactly what the District Court did in this instance. *See Frazier*, ¶ 21. We decline Usrey's invitation to expand our law to require district courts to specifically solicit an admission of the requisite intent elements of an offense in order to establish a factual basis for a guilty plea.

¶28 The underlying basis of Usrey's arguments as to why his guilty plea was involuntary is his assertion he did not fully understand what he was doing because of his limited mental capacity. Usrey's expert witness testified that his deficiencies were in nonverbal communication and he would understand the plea agreement if it was explained to him. Before accepting his guilty plea, the District Court asked Usrey:

> COURT: And before you signed it did you read through it carefully and go over it with your attorney?
>
> USREY: Yes, sir.
>
> COURT: Did he answer any questions that you had?
>
> USREY: Yes, sir.
>
> COURT: So you, you understand this agreement?
>
> USREY: Yes, sir.

¶29 The record before this Court contains substantial evidence supporting the District Court's conclusion that Usrey was mentally competent to enter a voluntary plea of guilty

10

and that he understood the proceedings. The District Court's factual findings in this regard are not clearly erroneous.

¶30 *Issue 2: Did the District Court err in admitting the testimony of Usrey's former attorney?*

¶31 Usrey argues the District Court erred in admitting the testimony of his former attorney, Halvorson, because nothing in the record shows he waived the attorney-client privilege and the State failed to obtain an order from this Court that Halvorson could testify and reveal confidential information, as is required by *In re Gillham*, 216 Mont. 279, 282, 704 P.2d 1019, 1021 (1985), and modified by *Marble v. State*, 2007 MT 98, ¶ 4, 337 Mont. 99, 169 P.3d 1148.

¶32 The District Court denied Usrey's motion to withdraw his guilty plea after concluding his plea was voluntary. The District Court found there was no evidence the plea was induced by threats or promises, misrepresentation, or unfulfilled promises. Further, the court concluded Usrey was mentally competent to plead guilty and was not taking any medication rendering him mentally incompetent. While recognizing Usrey had a below average intelligence, the court concluded he was not "mentally retarded."

¶33 The District Court's findings of fact, as well as its ultimate conclusion that Usrey's guilty plea was voluntary, are supported by the record without reference to Halvorson's testimony. Usrey himself verbally confirmed he went over the agreement with his attorney, his attorney answered his questions, and he understood the agreement. Disregarding Halvorson's testimony, the record contains substantial evidence supporting

11

the ultimate conclusion that Usrey's plea was voluntary. Thus, we need not decide whether the District Court erred in admitting Halvorson's testimony.

## CONCLUSION

¶34 The District Court did not err in denying Usrey's motion to withdraw his guilty plea.

¶35 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice James C. Nelson concurs.

¶36 I concur as to Issue 1. I concur as to Issue 2, but write separately to express my concern about the State's argument and the trial court's approach in this case.

¶37 I begin by noting that Usrey did not allege ineffective assistance of counsel in this case. He objected to his counsel testifying against him at the hearing on his motion to withdraw his guilty plea on the basis of his attorney-client privilege. The State argued that Usrey waived this privilege by filing a motion to withdraw his guilty plea. While this Court avoids the State's argument and the problem of Usrey's attorney testifying against his client, I believe that the trial court erred, nonetheless, in ordering Halvorson to

12

testify.

¶38    Under the State's view, if a criminal defendant moves to withdraw his guilty plea, by implication, he waives his attorney-client privilege. The defendant's attorney can voluntarily testify or can be compelled to testify and provide the prosecution privileged, confidential communications, and advice, to be used against defense counsel's client. I cannot agree with this approach.

¶39    The attorney-client privilege is provided for by statute as follows:

> **Attorney-client privilege.** (1) An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given to the client in the course of professional employment.

Section 26-1-803, MCA. The law is well established that "[a]bsent a voluntary waiver or an exception, the privilege applies to all communications from the client to the attorney and to all advice given to the client by the attorney in the course of the professional relationship." *Palmer by Diacon v. Farmers Ins.*, 261 Mont. 91, 108-09, 861 P.2d 895, 906 (1993) (citing *Kuiper v. Dist. Ct. of the Eighth Judicial Dist.*, 193 Mont. 452, 461, 632 P.2d 694, 699 (1981)); *see also* § 26-1-803, MCA.

¶40    A criminal defendant may waive the attorney-client privilege. However,

> [w]aiver is defined as the intentional or voluntary relinquishment of a known right or conduct which implies relinquishment of a known right. *Kuiper v. District Court* (1981), 632 P.2d 694, 698, 38 St. Rep. 1288. The burden of establishing waiver of the privilege is on the party seeking to overcome the privilege. *Miller v. Dis. Ct. City and Cty. of Denver* (Colo. 1987), 737 P.2d 834, 838. Two elements must be considered when a court reviews the waiver of an attorney-client privilege: (1) the element of a client's implied intention and (2) the element of fairness and consistency.

13

*See, 8 Wigmore,* Evidence § 2327 at 636; *State v. Balkin* (1987), 48 Wash. App. 1, 737 P.2d 1035, 1037.

> An implied waiver must be supported by evidence showing that defendant, by words or by conduct, has impliedly forsaken his privilege of confidentiality with respect to the communication in question. *Miller [],* 737 P.2d at 838.

*State v. Statczar*, 228 Mont. 446, 452-53, 743 P.2d 606, 610-11 (1987).

¶41 The State's argument and the trial court's approach turn *Statczar* on its head. In that case, this Court reversed the defendant's conviction when an attorney testified against his former client. We held, among other things, that the State presented no evidence that Statczar intended to waive his right not to divulge his privileged information, and that fairness and consistency coupled with the lack of evidence that defendant intended to waive the privilege required reversal of defendant's conviction. *Statczar*, 228 Mont. at 453, 743 P.2d at 611.

¶42 *Statczar* set forth a two-part test on which to gauge whether the defendant had impliedly waived his attorney-client privilege. First, there must be evidence showing that the defendant by words or conduct impliedly renounced his privilege of confidentiality with respect to the communication in question. And, second, the waiver must be consistent with concerns of consistency and fairness. *Statczar*, 228 Mont. at 453, 743 P.2d at 610-11 (citations omitted). With regard to this second prong, we took into consideration that *Statczar* had no prior contact with the judicial system; that his mental

14

capacity was questionable;[1] that he was unfamiliar with courtroom procedure; and that it was inherently unfair to require him to object to his attorney's testimony to prevent his statements from being used against him. *Statczar*, 228 Mont. at 453, 743 P.2d at 611.

¶43 Here, Usrey was not asked if he waived his privilege. Indeed, the record reflects that it was not his intent to do so—he objected to his attorney using his privileged communications against him. Furthermore, Usrey had an IQ of 71—even lower than Statczar's IQ of 75. Dr. Tim Casey, the psychologist referred to in the Opinion, ¶ 9, testified that Usrey was functioning in the borderline range; that he had a "markedly sub-average" ability to form concepts and deal with words; and that he had shortcomings with his auditory memory and visual alertness. As the Court itself observes, Usrey had only limited cognitive and academic abilities; he could only read at a second-grade level; and to fully understand the plea agreement, someone would have to verbally communicate its details to him. Opinion, ¶ 9.

¶44 It was the State's burden to show waiver. *Statczar*, 228 Mont. at 452, 743 P.2d at 610. The State claimed only that the former public defender had a waiver signed by Usrey—this purported written waiver was never placed in evidence, however. Moreover, the attorney testified that the waiver was limited, providing authorization for disclosure to Usrey's current counsel. Notwithstanding, the court summarily overruled Usrey's objection. The record in this case is devoid of evidence that Usrey, by his words or

---

[1] Statczar had an IQ of 75 and was functioning at a "borderline level." *Statczar*, 228 Mont. at 451, 743 P.2d at 609.

15

conduct, impliedly intended to waive his attorney-client privilege. The evidence is directly contrary. And, considerations of consistency and fairness are totally against any notion of waiver. The State failed in its burden to prove either prong of the *Statczar* test. Usrey did not expressly or impliedly waive his attorney-client privilege.

¶45 While the instant case is not a post-conviction-relief proceeding, we adopted a petition/order procedure in *Petition of Gillham,* 216 Mont. 279, 281, 704 P.2d 1019, 1020, permitting defense counsel to testify against his client in a post-conviction-relief proceeding where the defendant alleged ineffective assistance of counsel. We stated in *Gillham* that in such a situation, "the Attorney General shall first apply to this Court for an order preserving such responding attorney from charges of discipline or malpractice for revealing necessary confidential information from such convicted person." *Gillham*, 216 Mont. at 282, 704 P.2d at 1021. However, we also stated that this applied to "petitions for relief *of any kind . . .* based *in whole or in part on grounds of ineffective assistance of counsel . . . ." Gillham*, 216 Mont. at 282, 704 P.2d at 1021 (emphasis added). This is incredibly broad language, and that, along with the fact that the attorney-client privilege is protected by statute without such an exception, leads me to now conclude that our decision in *Gillham* was a mistake.

¶46 Indeed, in a form of "function creep"[2] the *Gillham* decision is now being cited for

---

[2] "Function creep" refers to the "expansion of a program, system or technology into areas for which it was not originally intended," and the "nearly impossible to stop . . . slippery slope toward ever broader law enforcement use" of new surveillance technology once it is installed. Clifford S. Fishman & Ann T. McKenna, *Wiretapping and*

16

and being used in ways not originally contemplated. *Gillham* has been, for years, limited to post conviction/ineffective assistance of counsel claims.[3] Here, however, the State cites *Gillham* as authority in a motion to withdraw a guilty plea case. And, in *State v. Patrick*, 2009 MT 220N, Supreme Court Cause No. DA 08-0197, the *Gillham* procedure was utilized in a judge-disqualification claim. It appears that *Gillham* is on the slippery slope. The State is now promoting and using *Gillham* as a convenient and comprehensive tool for breaching the defendant's attorney-client privilege when doing so will aid it in the prosecution of the State's case—and, unfortunately, the trial courts and defense counsel are allowing this to happen. I cannot agree with this approach.

¶47    *Gillham* effectively destroys the attorney-client privilege in criminal cases. *Gillham* judicially repeals § 26-1-803, MCA, in which the Legislature provided that "[a]n attorney *cannot, without the consent of his client,* be examined as to any communication made by the client to him or his advice given to the client in the course of professional employment [emphasis added]." To the contrary, *Gillham* decrees that in criminal cases an attorney *can, without the consent of his client,* be examined as to any communication made to him or his advice given to the client in the course of professional employment as long as there is *any kind* of claim based *in whole or in part* on the grounds of ineffective

---

*Eavesdropping* § 31:20 (April 2009). Function creep is precisely what is happening with the *Gillham* procedure.

[3]  *See Heath v. State*, 2009 MT 7, 348 Mont. 361, 202 P.3d 118; *Marble v. State*, 2007 MT 98, 337 Mont. 99, 169 P.3d 1148; *Watson v. State*, 2004 MT 308N, 325 Mont. 403, 106 P.3d 132; *Bone v. State*, 284 Mont. 293, 944 P.2d 734 (1997); *State v. Baker*, 272 Mont. 273, 901 P.2d 54 (1995).

assistance of counsel. Moreover, *Gillham* effectively annuls Montana Rule of Professional Conduct 1.6, regarding confidentiality, and deals the fundamental right to counsel guaranteed under the Fifth and Sixth Amendments to the United State's Constitution and Article II, Section 24 of the Montana Constitution, a monstrous wound.

¶48 The fundamental purpose of the attorney-client privilege is:

> to enable the attorney to provide the best possible legal advice and encourage clients to act within the law. The privilege furthers this purpose by freeing clients from the consequences or the apprehension of disclosing confidential information, thus encouraging them to be open and forthright with their attorneys.

*Palmer*, 261 Mont. at 106, 861 P.2d at 904 (citations omitted). Additionally, the attorney-client privilege fosters the attorney-client relationship by ensuring that attorneys are free to give accurate and candid advice without fear that the advice will later be used against the client. *Palmer*, 261 Mont. at 107, 861 P.2d at 904-05.

¶49 The State's argument and the trial court's approach in this case abrogate all of these important purposes and policies. I cannot agree that the attorney-client privilege should be discarded so cavalierly.

¶50 With those caveats as to Issue 2, I otherwise concur in the Court's Opinion.


/S/ JAMES C. NELSON