FILED

10/25/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0454

DA 20-0454

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 214N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

GEORGE ISAAC CARLON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC-2019-140
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Scott A. Albers, Attorney at Law, Helena, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney
General, Helena, Montana

      Leo Gallagher, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs:  May 11, 2022

Decided:  October 25, 2022

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. The case title, cause number, and disposition will be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 George Isaac Carlon appeals the March 2020 judgment of the Montana First Judicial District Court, Lewis and Clark County, denying his January 2020 motion to withdraw his plea of guilty to the offense of felony Partner or Family Member Assault (PFMA). We affirm.

¶3 The State charged Carlon with third offense PFMA, a felony in violation of § 45-5-206(1)(a), MCA. At trial in October 2019, the State presented evidence that, on the morning in question, a heated argument resulted in violence between Carlon and his romantic partner when Carlon accused him of infidelity. A mutual friend testified that, upon answering an inadvertent telephone call from the partner's phone that morning, she heard him ask Carlon to stop biting him and leave. After the friend reported the incident, deputy sheriffs responded to the partner's home and observed a fresh bite wound on his chest.

¶4 During the defense case-in-chief, Carlon testified that he bit his partner, but asserted that he did so only in self-defense after his partner twice hit him in the face and broke one of his teeth. Carlon twice denied on cross-examination that his partner also bit him during the argument. The State then questioned him about making a contrary assertion in a sworn statement in support of his application for a temporary protective order two weeks before

2

trial. He admitted that he swore under oath to the municipal court that his partner bit him during the argument, but that he was now contrarily testifying at trial that his prior sworn statement was not true. He testified that he knew that his prior sworn statement was not true when he made it, and that he also knowingly failed to disclose to the municipal court that he bit his partner. The State further impeached Carlon's trial testimony with a body cam recording of a sheriff's deputy interviewing him about an hour after the altercation. The recording showed Carlon deny that anything physical occurred that morning between he and his partner. The deputy testified that he saw no sign of injury to Carlon's face.

¶5 In the morning on the second day of trial, before a recess at the close of the record jury instruction settlement conference regarding the charged PFMA, the District Court stated to both counsel in Carlon's presence that, "I would remind *counsel* that you are still able to try to resolve this case before the jury returns a verdict[,] [a]nd personally, after yesterday, I would make those attempts, ok?" (Emphasis added.) When the parties reconvened after a 40-minute recess before closing arguments, defense counsel advised that "my client would like to make an open plea at this time." The District Court thus conducted a comprehensive change of plea colloquy with Carlon which included the following exchanges, *inter alia*:

> [Court]: All right. Mr. Carlon, the Court's comments about—this morning about resolution of the matter were not intended to dissuade you from exercising your right to continue with your jury trial. Do you understand that, sir?
>
> [Carlon]: Yes, Your Honor.
>
> [Court]: Would you like to continue with your impartial trial by jury?

3

[Carlon]:   No, Your Honor.

. . .

[Court]:   Sir, do you understand that by pleading guilty you are waiving all of these rights? I mean, you are almost to the finish line here with this jury. All we have to do is do final instructions and closing arguments and let them deliberate. Are you—are you willing to waive all of those rights, sir, and plead guilty to . . . [PFMA]?

[Carlon]:   Yes, Your Honor.

[Court]:   Are you satisfied with your attorney . . . ?

[Carlon]:   Yes.

. . .

[Court]:   And you understand pleading guilty to this charge is an important decision?

[Carlon]:   Yes, Your Honor.

[Court]:   Have you been coerced, threatened, or promised any benefits if you plead guilty?

[Carlon]:   No, Your Honor.

[Court]:   All right. And it's an open plea?

[Counsel]: Yes, Your Honor.

[Court]:   No sentencing agreement between the parties?

[State]:   No agreement, Your Honor. The only concession the State has offered is that I agree[d] if he entered an open plea today I would not charge him with perjury.

[Court]:   All right. So, Mr. Carlon, I need to go back to a previous question. Have you been coerced, threatened, or promised any benefits if you plead guilty to . . . [PFMA] other than [t]hat [the State] just indicated to me that [it] would not charge you [with] perjury?

4

[Carlon]:   No. (Pause – off-record discussion with defense counsel) . . . Yes, [] [the State] was going to file another charge, and so I figured it would be better to plead out than to be up against two charges.

[Court]:    All right.

The court then made oral findings of fact and ultimately concluded that: (1) Carlon was "acting under the advice of competent counsel" and understood his rights, the charged offense, and the "possible punishment"; (2) he was "not under mental, physical, or emotional defect or disability . . . [or] the influence of drugs or alcohol"; (3) "[n]o promises or threats have been made to [him] to cause [him] to" change his plea; and (4) he thus "voluntarily, knowingly, and intelligently" changed his plea. Based on those findings and conclusion, the court accepted his guilty plea.

¶6     Prior to sentencing, Carlon retained new counsel who filed a motion seeking withdrawal of his guilty plea on the asserted ground that he involuntarily pled guilty to the charged PFMA based on his mistaken belief that, if not, the State would "immediately" charge him with perjury in the same case and that he would thus be subject to conviction on both charges at the same trial later that day. At the motion hearing, Carlon presented testimony from his mother, sister, and a former romantic partner who were all present when he decided to change his plea. Based on their observations of and interactions with him that morning, each testified to his or her belief that Carlon believed he was suddenly subject to a new charge (perjury) which the State would then argue to the jury with the originally charged PFMA, and which he could thus avoid if he pled guilty to the PFMA. Carlon concurred and then further testified that, contrary to his prior representation to the court during his change of plea colloquy, he *did* feel threatened and coerced at that time because

5

"I figured it would be best to . . . go up against just [the PFMA] versus [] two charges." Upon expressly waiving his attorney-client privilege with his former counsel, Carlon further explained that his trial counsel was "very vague" about "the perjury charge" and "kind of told me that she felt like I would lose on the perjury charge." When asked directly whether trial counsel specifically told him that he would be subject to a perjury charge and conviction before the same jury that afternoon, he said, "[n]o[,] [t]hat is not my testimony here today," that is "just how I interpret[ed] it to be and my misunderstanding." Carlon did not, however, present any testimony from his former counsel as to what she actually said to him, nor offer any explanation as to why not.

¶7 Based on comprehensive written findings of fact and conclusions of law, the District Court denied Carlon leave to withdraw his guilty plea. The court found, *inter alia,* that the change of plea record manifested that Carlon affirmatively represented that he was satisfied with his counsel and that he "voluntarily, knowingly, and intelligently" changed his plea with the assistance of counsel. The court further found that his asserted "misunderstanding" was based on his own subjective perception of the circumstances, and that he presented no objective evidence supporting his asserted misperception. The court found that Carlon's alleged misperception was not objectively reasonable in light of his extensive prior experience as a criminal defendant, his change of plea colloquy, the fact that he was assisted by counsel, and the fact that the then just-settled jury instructions and verdict form neither included, nor even referenced, perjury or any charge other than the originally charged PFMA. The court thus ultimately concluded that Carlon had not shown good cause for withdrawal of his plea. Carlon timely appeals.

6

¶8 On good cause shown, trial courts have discretion to allow an accused to withdraw a guilty plea at any time. Section 46-16-105(2), MCA. As a waiver of fundamental constitutional trial rights, a guilty plea is valid only if made knowingly, voluntarily, and intelligently with sufficient awareness of all relevant circumstances, any alternative courses of action open to the accused, and the likely consequences of the change of plea. *State v. Radi*, 250 Mont. 155, 159, 818 P.2d 1203, 1206 (1991) (citing *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970)); *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970). Whether "good cause" exists for withdrawal of a guilty plea under § 46-16-105(2), MCA, thus involves consideration of an array of case-specific factors under the totality of circumstances. *State v. McFarlane*, 2008 MT 18, ¶ 17, 341 Mont. 166, 176 P.3d 1057. Relevant factors include, *inter alia*, the accused's ability to soberly comprehend the relevant circumstances and direct consequences of the plea including the actual value of any commitments to the accused from the court, prosecutor, or defense counsel, the adequacy of the change of plea colloquy, whether the accused received effective assistance of counsel, and whether the plea was induced by any threat, misrepresentation, or improper promise, inducement, or influence. *State v. Terronez*, 2017 MT 296, ¶¶ 27-28, 389 Mont. 421, 406 P.3d 947 (internal citations omitted); *State v. Usrey*, 2009 MT 227, ¶ 17, 351 Mont. 341, 212 P.3d 279 (internal citations omitted); *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472. This searching inquiry necessarily includes consideration, *inter alia*, of the state of mind and subjective impressions of the accused at the time of the plea, but based on the objective record facts and circumstances rather than unsupported, after the fact assertions. *State v. Humphrey*, 2008 MT 328, ¶¶ 22-23, 346 Mont. 150, 194

7

P.3d 643 (internal citations omitted). An accused's subsequent assertions regarding his or her subjective state of mind or impressions at the time of a change of plea are thus sufficient for subsequent withdrawal of the plea only if the asserted state of mind or subjective impressions are both supported by substantial objective evidence of record, and objectively reasonable under the record circumstances. *Humphrey*, ¶ 23 (internal citations omitted); *accord State v. Burns*, 2012 MT 97, ¶ 15, 365 Mont. 27, 278 P.3d 452 (citing *Humphrey*).

¶9 Under § 46-16-105(2), MCA, the accused has the burden of demonstrating that a challenged guilty plea was not knowing, voluntary, or intelligent at the time. *Terronez*, ¶ 27; *Humphrey*, ¶ 23 (internal citation omitted). Whether a challenged guilty plea was knowing, voluntary, and intelligent is a mixed question of fact and law, with the ultimate question subject to de novo review on appeal. *State v. Warclub*, 2005 MT 149, ¶¶ 17-18, 22-24, 327 Mont. 352, 114 P.3d 254. Any supporting findings of fact regarding the underlying facts and circumstances are presumed correct, however, and are thus subject to appellate review only for clear error. *Warclub*, ¶¶ 22-23.

¶10 Here, Carlon has not demonstrated that any material District Court finding of fact was clearly erroneous. The court correctly found on the evidentiary record presented that Carlon's asserted "misunderstanding" was based on his own subjective impression of what his trial counsel said, rather than any evidence as to what she actually said. The court further correctly found on the evidentiary record that the asserted subjective "misunderstanding" was neither supported by any objective record evidence, nor objectively reasonable under the circumstances.

8

¶11 We nonetheless find improvident, and do not condone, the District Court's unprompted comment on what happened "yesterday." Regardless of merit or the court's apparent good intention, the comment was unsolicited, unnecessary, and, though it did not specifically mention Carlon or what the court was referring to, was clearly understood by the parties to be a negative comment on his testimonial performance at trial. We note, however, that the comment clearly was not addressed to Carlon. Nor did it expressly or implicitly pressure or threaten him to change his plea, or promise or offer any inducement for doing so. It was not a comment on Carlon's innocence or guilt regarding the charged PFMA, a manifestation of bias or prejudice against him, or a suggestion of any type or terms of stipulated resolution of the case. The comment did not express or imply that Carlon would be subject to a new perjury charge, whether in the pending PFMA case or another, or expressly or implicitly demand, require, or otherwise pressure the parties to enter into plea negotiations. It was at most a suggestion that they consider doing so, and in regard to which both counsel were manifestly aware they were under no obligation to do. Nor did the comment threaten or imply that Carlon would suffer or be subject to any adverse consequence from the court if they did not. The comment similarly did not suggest, imply, or otherwise create the appearance that any decision that the State might make to charge Carlon with perjury would have any involvement in or bearing on the impending jury deliberations in the PFMA case, or at sentencing in the event of a conviction.

¶12 Glaringly absent from the hearing record in the wake of Carlon's waiver of his attorney-client privilege with trial counsel was any corroborating testimony from trial counsel supporting his assertion that, but for the court's comment, he would not have

9

changed his plea.  The record is further devoid of any showing that trial counsel would not have been willing or available to testify upon request or subpoena.  Even further belying Carlon's subsequent unsupported assertions of coercion, misunderstanding, and causation of his change of plea are his clear and unequivocal contrary representations to the court during his change of plea colloquy.

¶13    Carlon thus pivots to a new theory on appeal, i.e., that his guilty plea was involuntary, unknowing, and/or unintelligent based on ineffective assistance of counsel (IAC) at trial.  However, we will not address issues raised for the first time on appeal.  Even if, *arguendo*, he had asserted IAC below, no IAC is manifest on the record and any such claim is thus a non-record-based claim not amenable to review on direct appeal.

¶14    We hold that the District Court did not erroneously deny Carlon's motion to withdraw his guilty plea.  We decide this case by memorandum opinion pursuant to our Internal Operating Rules.  It shall not be cited and does not serve as precedent.  Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA