FILED

03/12/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0327

DA 21-0327

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 52N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

THOMAS JAMES LUCERO,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2019-115
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Gregory D. Birdsong, Birdsong Law Office, Santa Fe, New Mexico

      For Appellee:

      Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

      Kevin Downs, Lewis and Clark County Attorney, Fallon Stanton, Deputy
County Attorney, Helena, Montana

              Submitted on Briefs:  April 26, 2023

                    Decided:  March 12, 2024

Filed:

                             _____
                                  Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and is not precedent. Its case title, cause number, and disposition will be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Thomas Lucero appeals his October 2020 judgment of conviction on multiple felony offenses in the Montana First Judicial District Court, Lewis and Clark County. We affirm.

¶3 In February 2019, the State charged Lucero by Information with: (1) aggravated kidnapping (two counts) in violation of § 45-5-303(1)(b)-(c), MCA; (2) aggravated sexual intercourse without consent (three counts) in violation of § 45-5-508, MCA; (3) partner/family member (PFM) strangulation in violation of § 45-5-215(1)(a), MCA; and assault with a weapon (two counts) in violation of § 45-5-213(1)(a), MCA. The State alleged that, after a night of heavy drinking, Lucero committed the above-listed offenses against his girlfriend (J.F.) at her home in Helena in January 2019. According to J.F., upon confronting him and demanding that Lucero be quiet around 2 a.m., he began hitting, punching, and kicking her in a violent rage. Over the next five hours, Lucero threatened and cut her multiple times with multiple knives, hog-tied and strangled her with a strand of Christmas lights, stabbed her air mattress, cut her hair, poured Worcestershire sauce in her wounds, beat her with a metal lamp, and forced vaginal, anal, and oral sex to the point where J.F. vomited. After allegedly telling her he was going to take her to the Crow Reservation to dispose of her body, Lucero allegedly forced J.F. at knifepoint to drive them

2

to Billings. After J.F. covertly signaled passing motorists for help, law enforcement responded and intercepted J.F.'s vehicle and stopped it with spike strips west of Bozeman. Upon a *Miranda* rights advisory and waiver, Lucero admitted to police that, incident to an altercation with J.F. over loud music, he punched and kneed holes in her apartment walls, and cut her with a knife. Consistent with his account, he was wearing blood-stained clothing and shoes and possessed a knife matching those later found in J.F.'s apartment.

¶4 Lucero later pled not guilty upon subsequent arrest and formal charging in Lewis and Clark County. In advance of an October 2020 final pretrial conference, the parties reached an informal nonbinding plea agreement pursuant to § 46-12-212(2), MCA, which called for: (1) the State to amend one count of aggravated sexual intercourse down to sexual intercourse without consent (SIWC); (2) Lucero to enter *Alford* guilty pleas[1] to one count each of aggravated kidnapping, SIWC, PFM strangulation, and assault with a weapon; (3) the State to drop all other charges; and (4) each party to make their own sentencing recommendation. At the scheduled pretrial conference, the District Court commenced a change of plea hearing on the parties' informal plea agreement. Shortly into the change of plea colloquy after granting the State's motion to amend the charging Information in accordance with the plea agreement, however, the District Court noted that Lucero "look[ed] kind of distressed" and "upset." Though he affirmatively asserted that he understood his rights and the waiver effect of an *Alford* guilty plea, Lucero later

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970).

equivocated by stating he did not think he had any choice but to plead guilty under the circumstances. Despite the assertion of counsel that, after extensive attorney-client consultation that included family members, Lucero fully understood and consented to the agreement, the court postponed the change of plea hearing to afford him additional time to consider his options.

¶5 When the parties appeared again the next day, defense counsel explained that, upon further consultation, Lucero fully understood his options and the consequences of pleading guilty, and was thus ready to change his plea in accordance with his prior plea agreement. The court then conducted a new change of plea colloquy during which Lucero denied having any mental, emotional, or physical disability impairing his ability to understand what was happening, and confirmed that he was now "clearheaded" unlike the day before. After acknowledging his rights and the waiver effect of a guilty plea, asserting that he was proceeding voluntarily without coercion, acknowledging that the State would present evidence at the sentencing hearing to establish a sufficient factual basis for his *Alford* guilty pleas, asserting that he was satisfied with his counsel's representation, asserting that he was not under the influence of alcohol or drugs, and stating that he understood the maximum penalties on the offenses to which he would plead, Lucero entered *Alford* guilty pleas to each of the agreed offenses. The court then accepted the pleas on the expressly stated ground that they were knowing, voluntary, and intelligent waivers of his trial rights.

¶6 At sentencing, the State presented several witnesses including, *inter alia*, the investigating police detective who gave testimony regarding the alleged facts of the case

as originally charged, and a state probation officer who testified in support of the Department of Corrections presentence investigation report. The defense presented testimony from Lucero's father who asked for probation and asserted that Lucero had been "tricked" into pleading guilty. Upon hearing the respective sentencing recommendations and arguments of counsel, the District Court sentenced Lucero to serve concurrent 40-year prison terms, with five years suspended, on aggravated kidnapping and SIWC, and a net consecutive 15-year prison term on PFM strangulation and assault with a weapon. The court granted him credit for time-served, designated him a Tier 2 sex offender, and ordered him to register as both a violent and sexual offender under Title 46, chapter 23, part 5, MCA. Lucero timely appeals.

¶7 Lucero asserts three errors on appeal. He first asserts that the District Court erroneously accepted his pleas because he "did not fully understand the possible punishments for the charges against him," and because he pled guilty under "duress." He next asserts that "both the prosecution or [sic] the district court violated the terms of the *Alford* plea" by making an unnecessarily inflammatory factual showing in support of his *Alford* pleas that included facts supporting the dismissed charges, and a similarly inflammatory and impassioned "argument detailing every allegation against" him. He asserts that the State thereby undermined the plea agreement and denied him "the benefit of the [plea] bargain" because the unnecessary evidentiary showing and accompanying argument foiled his expectation that he "would receive a lesser sentence if he entered the *Alford*" guilty pleas, and because he did not understand the parole eligibility implications

5

of his pleas. Lucero finally asserts that he received ineffective assistance of counsel (IAC) in violation of the Sixth and Fourteenth Amendments of the United States Constitution based on the alleged complicity of his trial counsel in allowing him to plead guilty without objection and advice that would have avoided his subsequently asserted assertions of error.

¶8  "Failure to contemporaneously object . . . generally constitutes a waiver of the right to seek appellate review" of an asserted record-based error below. *State v. Miller*, 2022 MT 92, ¶ 10, 408 Mont. 316, 510 P.3d 17. "However, as a narrow exception to the waiver rule, we may, in our discretion, review an unpreserved assertion of error under [our] common law plain error doctrine upon an affirmative showing of: (1) a plain or obvious error" (2) "implicat[ing] a constitutional or other substantial right" and (3) which "if not corrected" will "result in a manifest miscarriage of justice or otherwise prejudicially undermine the fundamental fairness of the proceeding or compromise the integrity of the judicial process." *Miller*, ¶ 10. As a waiver of fundamental constitutional trial rights, a guilty plea is valid only if made knowingly, voluntarily, and intelligently with sufficient awareness of all relevant circumstances, any alternative courses of action open to the accused, and the likely consequences of the change of plea. *State v. Radi*, 250 Mont. 155, 159, 818 P.2d 1203, 1206 (1991) (citing *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970)); *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1468-69 (1970); *State v. Peterson*, 2013 MT 329, ¶ 22, 372 Mont. 382, 314 P.3d 227. The essential question is whether the record manifests that, upon inquiry, the "defendant understands and accepts the risks and consequences of a guilty plea as a voluntary, knowing, and intelligent choice"

in contrast to trial. *State v. Knox*, 2001 MT 232, ¶ 17, 307 Mont. 1, 36 P.3d 383 (citing *Radi*, 250 Mont. at 159, 818 P.2d at 1206). *See similarly State v. Mahoney*, 264 Mont. 89, 94-95, 870 P.2d 65, 69 (1994) (guilty plea and concomitant waiver is knowing, voluntary, and intelligent if upon inquiry defendant "understands the charge" and "possible punishment," "is not acting under the influence of drugs or alcohol," and admits competence of and satisfaction with representation of counsel—citation omitted). Whether a guilty plea was knowing, voluntary, and intelligent depends on an array of case-specific factors under the totality of circumstances. *State v. McFarlane*, 2008 MT 18, ¶ 17, 341 Mont. 166, 176 P.3d 1057. Relevant factors include, *inter alia*, the accused's ability to soberly comprehend the relevant circumstances and direct consequences of the plea including the actual value of any commitments to the accused from the court, prosecutor, or defense counsel; the adequacy of the change of plea colloquy; whether the accused received effective assistance of counsel; and whether the plea was induced by any threat, misrepresentation, or improper promise, inducement, or influence. *State v. Terronez*, 2017 MT 296, ¶¶ 27-28, 389 Mont. 421, 406 P.3d 947; *State v. Usrey*, 2009 MT 227, ¶ 17, 351 Mont. 341, 212 P.3d 279; *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472. This searching inquiry necessarily includes consideration, *inter alia*, of the state of mind and subjective impressions of the accused at the time of the plea, based on objective facts and circumstances of record rather than unsupported, after-the-fact assertions. *State v. Humphrey*, 2008 MT 328, ¶¶ 22-23, 346 Mont. 150, 194 P.3d 643. Subsequent assertions regarding the subjective state of mind or impressions of the accused at the time of change

7

of plea are insufficient to challenge the validity of a plea unless supported by substantial objective evidence of record *and* objectively reasonable under the record circumstances. *Humphrey*, ¶ 23; *accord State v. Burns*, 2012 MT 97, ¶ 15, 365 Mont. 27, 278 P.3d 452 (citing *Humphrey*). Whether a guilty plea was knowing, voluntary, and intelligent is a mixed question of fact and law, with the ultimate question subject to de novo review on appeal. *State v. Warclub*, 2005 MT 149, ¶¶ 17-18 and 22-24, 327 Mont. 352, 114 P.3d 254.

¶9 The related but distinct question of whether an accused received IAC in violation of the Sixth and Fourteenth Amendments to the United States Constitution is also a mixed question of fact and law under the two-prong affirmative showing specified in *Strickland v. Washington*, 466 U.S. 668, 684-89, 104 S. Ct. 2052, 2063-65 (1984) (i.e., constitutionally deficient performance and resulting substantial prejudice). *McGarvey v. State*, 2014 MT 189, ¶ 14, 375 Mont. 495, 329 P.3d 576.[2] IAC claims are reviewable on direct appeal only if record-based (i.e., the record fully manifests the rationale for the disputed action or inaction), or on the rare occasion that no plausible reasonable justification exists for the subject action or inaction. *See, e.g.*, *State v. Olson*, 2014 MT 8, ¶ 20, 373 Mont. 262, 317 P.3d 159; *State v. Briscoe*, 2012 MT 152, ¶ 10, 365 Mont. 383, 282 P.3d 657; *State v. Fender*, 2007 MT 268, ¶ 9, 339 Mont. 395, 170 P.3d 971; *State v.*

---

[2] *See similarly Heath v. State*, 2009 MT 7, ¶¶ 13 and 17, 348 Mont. 361, 202 P.3d 118; *Whitlow v. State*, 2008 MT 140, ¶¶ 9-11, 343 Mont. 90, 183 P.3d 861; *State v. Herrman*, 2003 MT 149, ¶¶ 17-18, 316 Mont. 198, 70 P.3d 738; *State v. McElveen*, 168 Mont. 500, 501-03, 544 P.2d 820, 821-22 (1975).

*White*, 2001 MT 149, ¶ 20, 306 Mont. 58, 30 P.3d 340; *Hagen v. State*, 1999 MT 8, ¶ 12, 293 Mont. 60, 973 P.2d 233; *In re Evans*, 250 Mont. 172, 173, 819 P.2d 156, 157 (1991).

¶10 Upon review of the parties' briefing on appeal and the record below, we hold that Lucero has failed to meet his burden of demonstrating that the District Court committed plain error in: (1) accepting his *Alford* guilty pleas; (2) allowing the State to present the subject evidence establishing the factual bases of those pleas at sentencing; (3) allowing the State to make its sentencing recommendation and supporting argument; or (4) not sentencing him in accordance with his nonbinding plea agreement. Nothing in this Opinion precludes Lucero from timely asserting a non-record-based IAC claim by petition for postconviction relief pursuant to Title 46, chapter 21, MCA.

¶11 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE